Good morning. Good morning. May it please the Court. My name is Todd Anderson. I represent all of the defendants, appellants in this matter, including myself. The District Court must be reversed because he exceeded his jurisdiction when he purported to empower the court-appointed commissioner to be the defendant's agent to force them into a joint venture agreement with a mine operator. Additionally, the District Court must be reversed because he exceeded his jurisdiction when he purported to make the plaintiff the defendant's agent for purposes of collecting, modifying, or selling the royalty. Counsel, have you ever been involved in a partition action before? In a partition action?  No, Your Honor. Your Honor, what happened here is really quite common in partition actions. And I guess what I'm struggling with in this case is you're dealing with strip mining. It seems to me that what you have proposed would, in effect, make any kind of a sale almost worthless because you've got big machines digging in the earth. It's really hard to have a little piece here, a little piece there. You've got to have whole areas that you deal with. And in order to get the best price, if the parties can't agree, and it's pretty obvious here the parties can't agree, you really have to get into a sale situation. It's extremely common. So what I'm struggling with is how this works in practicality. One of the things I'd like to know is there was a 60-day period that the judge provided for allowing anybody to come up with a better offer than had been made to that point. Did you or anyone else come forward with a better offer at that point? 65 days later, yes, we did. But not 60 days later? Not 60 days. We asked for six months. The defendants asked for six months to come up with a new buyer, someone to buy out the plaintiff or buy out everyone. And the district court arbitrarily granted 60 days to the defendants to come up. And 65 days later, we had a $4.2 million offer from InvestLink Wealth Services. Okay. Let me ask you this. You're a lawyer. You know courts all the time lay out, you know, numbers of days. Counsel do this within such and such number of days. What was arbitrary about a 60-day period? Well, first of all, it should not be on the defendants to market the property. That's the job of the commissioner. When the court appoints a commissioner ---- With respect, counsel, you're going off on a different track. My question to you is this. I want to know whether there was another offer that was produced. The court said 60 days. Bring in your offer. 60 days. It happens all the time with sales of property, trust deeds, et cetera, et cetera, and also in partition actions. So what I'm understanding you to say is that nobody did come forward within the 60 days provided. Am I correct? That's correct, yes. So you said in 65 days there was an offer from a group. Did the court look at that? Did you move for reconsideration? Did you do anything to ask the court to consider that offer? Yes, and it did consider the offer, and it stated that it's only debatable which of the two offers is better and that it wasn't convinced that what InvestLink was making is an actual binding offer, but it did consider the offer. Okay. And the court said that because it wasn't a binding offer or were there terms in it that were conditional that the court felt made it less attractive than the other offer? In the offer, InvestLink said we are prepared to pay $4.2 million, and the plaintiff argued, oh, that doesn't mean that they're committing themselves, they're just saying they're prepared to pay it, and that was the argument. That's, as you well know, as an attorney, words matter. And I gather you're saying the district court concluded that the offer was somehow contingent. Is that a correct characterization? I can't speak for the district court, but it seemed like the district court, I believe it said that it did not, it was not convinced that that was a binding offer. Would he be right? I don't think so. It was an offer. It was not any, it was just as binding as Freeport MacMorrise. If I say to you, I will give you this building if the moon doesn't rise tonight. Now, I have a pretty good idea the moon won't rise, and I don't have the title of the building anyway, so would that be a good offer for purposes of this illustration? Would it be a good offer to say I will give you if there's a condition there? If you know it's not going to happen or, you know, there seems to be some doubt of your ability to perform, for example. What I'm trying to get to is I'm struggling to see what the district judge did that was out of the ordinary in a partition action, and I honestly am not seeing it. I want you to help me. What he did wrong here. Okay. The 60-day thing doesn't trouble me at all. Okay. First of all, any sale, any partition by sale must be for all cash. The Arizona statutory scheme for partition used to allow a judge to sell for cash or upon other terms as the court may direct. But that language has been taken out. At some point it was taken out of the statutory scheme in Arizona, which leaves us with a sale, a sale meaning all cash. And what do you rely on for that? Case law? Well, the Arizona statute, there is no case law and there is no statute that says a district court or any court can sell through partition in Arizona a property for something, for terms other than all cash. Okay. And what I'm asking for is, is there an Arizona case law or an Arizona statute that says that? That it must be for all cash? Like I know, but like I say, when statutory language, when certain language is removed from the statutory scheme, that means something. When it used to say it must be. Counsel, with respect, I understand that's what you think. And you may or may not be right. I'm asking you whether there's any authority in the State of Arizona to back up what you think. I understand you say there isn't. Well, actually, let me change my answer if I could, please. I would point to the 2008 Owens case, which is cited at ER 54. In Owens, the Arizona Supreme Court said that any partition action must comply with the statutory scheme. And in the statutory scheme, there is no authority for a court to sell a property in exchange for promises or some promises and some cash. But it gives the court great latitude, does it not, to fashion an equitable remedy? It gives the court a road map, a very specific road map as to how to proceed in trying to provide an equitable remedy. And here, the diversity court did not follow that road map. It did not follow any of the steps that are outlined in the road map. It did not first hold a hearing to determine the share or interest of each of the parties. It did not order that the property first be physically divided. It did not then appoint three or more commissioners. And your contention is that that is required by the statute in all cases? In all cases, yes, unless the defendant or defendants waive their right to have those steps implemented. Okay. And do you have any authority for that proposition? Well, the only case where that we know of where an Arizona property was partitioned by sale by way of summary judgment is the Registry v. Coleman case. But in that case, the defendant there, once his first argument failed, he was first arguing that he owns 100 percent of the property because of an oral contract that he had reportedly had with his mother. And once that argument failed, his principal argument, he did not oppose the sale for all cash. And so that property was sold by way of motion for summary judgment. That was 1981. But again, he was not invoking his right to have the partition procedure implemented, to have all the steps implemented. Let me ask you this. One of the purposes of a partition statute is to basically resolve a problem between warring co-tenants. In this case, your family, I don't know whether it's you or your dad or whoever, but you look like a pretty young guy to have all these kids, so I'm assuming it's your dad, but I don't know. As soon as this got started, you basically started conveying interest out to kids. Is that right? My father did make 12 transfers after he got served. Okay. And you didn't do that to be helpful to the court. Is that a fair statement? It wasn't to be helpful or unhelpful. Come on, counsel. Be serious. You're telling me that your dad did it because it was a nice day and he thought he ought to convey undivided interest to other people? It was a strategic move, wasn't it? It was. And it was one month after the plaintiff made a strategic move. When it transferred, when all the plaintiff's members transferred all of their interest to an LLC so that there would be two owners instead of six that the court saw, that was the first strategic move. And as a response to plaintiff's strategic move, Defendant John Anderson did make 12 property interest transfers with an eye toward preserving value so that plaintiff is not allowed to spoil the value. Okay. Now, I know you contend that by having all these different sales, it would increase the value. Do you have any evidence that would show that had there been 12 different sales that the value would have been increased over what was obtained in the sale that actually took place? It's a speculation, isn't it? Well, sure, yes. But if we look at the recent comparable sales of fractional interest, undivided fractional interest, very close in the Santa Lucia, Santa Isabella, sometimes referred to as the Missy claims, we see that a 15 percent ownership interest, an undivided ownership interest in 32 acres in that area, in Mineral Ridge Section 32, sells for at least $500,000. So that would lead us to believe that all 16 mining claims are worth approximately $32 million. But, Counsel, doesn't that have to do with the proximity to where the mining is taking place? If you have one that's way down the road, that's not worth as much as the one that's right close by, is it? That's correct, but these are all right next to each other. The Missy claims, i.e., the Santa Lucia and Santa Isabella, are right below the Coopwright group of claims. It's a stone's throw away, and it's all on the same mountain. They're all right next to the open pit mine known as the Coronado Mine, and they're all right next to the open pit mine known as the Garfield Mine. And I would point out that there really is no reason to partition an Arizona mining claim. A plaintiff cannot point to a single example where an Arizona mining claim has ever been partitioned by sale or partitioned in any way because there's no reason for it. Freeport-McMoran itself only owns 85 percent of the Marense Mine. It has an 85 percent stake. And it only owns 80 percent of the Santa Lucia and Santa Isabella, yet it's mining those properties. Because any owner of a mining claim can mine that property as long as he or she accounts to his or her or its co-tenants and provides them a pro rata share of any net proceeds. So plaintiff never actually wanted partition. Plaintiff did not want to divide the property in kind, and plaintiff did not want to actually sell the property. Plaintiff wanted to trade the property for approximately 10 percent of its value up front, plus a set of business contracts, a joint venture agreement, plus a certain amount of drilling on Freeport's nickel. And they wanted at least 2 percent of all future mineral production. So this really was a trade, not so much a sell. Counsel, before you sit down, would you address briefly your contention regarding the district court's agreement of summary judgment being an error under Arizona law? The district court's contention? Your contention. Well, my contention, that it's an error to grant a motion. Yes. When the defendants, when there's a defendant not waiving the right, the rights that are there in the Arizona statutory scheme, unlike Registrar v. Coleman, the defendants here are asserting their rights to have the substantive law in Arizona apply to this action, to have the procedure followed, the steps followed. And so it's not appropriate in this case for the district court to grant a motion for summary judgment when the defendants are saying, wait a minute, what about Arizona's substantive law? What about the procedures? What about having the hearings that the law requires? And if this matter had been filed in state court, a state law judge likely would have simply said, well, I know you want this deal with Freeport-Macaron, but you've asked for partition. I have to look at the Arizona statutory scheme, because in 2008, the Arizona Supreme Court, in the Owens case, said that any remedy must comply with the statutory scheme. And so I've got to follow the procedure. We have a procedure here in Arizona for partition, and I've got to follow the steps. And if the defendants are saying, yes, they want all the steps followed, then I have to follow them. And here, what Plaintiff was asking is for the district court to circumvent Arizona's statutory scheme, which is Arizona's substantive law in Arizona, so that it can achieve the result that it wanted, which was a business deal, and not exactly a sale. A sale must be for all cash, especially considering the fact that courts in Arizona used to have discretion to sell for something other than all cash, and there's no — they no longer have that discretion. When the Arizona State Legislature removed that language, allowing a court to sell for something other than all cash, they also removed that court's discretion. That's your position. That's my position. And I only have 30 seconds left. May I — if I could preserve? Of course. Thank you. We'll hear from the appellee. Thank you. Good morning. My name is Gary — well, and may it please the Court, excuse me. My name is Gary Ehrman. I'm the attorney for the appellee, Kuprite Mine Partners. And obviously we believe that the Court did nothing wrong throughout these proceedings and that summary judgment was properly granted for the plaintiff in this case. You've heard — Let me just ask you one thing before we get too far into this, Counsel. We had asked you to be prepared to comment on the role of Erie, if anything. Arizona law does speak about a trial, which, of course, did not occur here. Is that a procedural matter that would be covered by Erie, since this is a Federal Court? Or do we rely upon the Arizona Supreme Court case that seems to approve it as well but didn't discuss the statute? Well, this particular statute that we're talking about, 12-1218, does use the word trial. Whether it contemplates a trial, I'm not completely convinced. And so at this point, I'm not even convinced that there's a precede or a substantive right to trial in this situation, because if you follow the partition process according to what the Andersons claim should have been followed, you're going to have a lawsuit filed. You're going to have commissioners appointed. Commissioners are going to try to physically divide the property. If they can't do that, they're going to report to the court. The court's then going to order a sale. Where's the room for a trial if we follow their process? So your position is that the word trial is not a term of art that lawyers use. It just means a decision over a contested matter? Is that what we're talking about? I believe that very well may be a reasonable construction of this particular language. However, that being said, even if you construe the word trial as a substantive right, we still have the Erie considerations that still bring the court to a proper summary judgment in this case. As we know under Erie, a Federal court sitting in diversity jurisdiction will follow substantive State law and procedural Federal law. And trials in this case would be procedural? Yes. Yes. What do you rely upon for that? Well, the simple fact that, well, a couple of things. First of all, obviously, you may have a substantive right to a trial, but how you go about going through that trial is governed by the rules of procedure, and the rules of procedure include Rule 56. Now, in Arizona, for example, you may look at the Arizona Constitution, which guarantees a trial in court cases, Article VI, Section 17. Now, if you've got a substantive right to trial in every case under Arizona law, if you're going to say that summary judgment is inapplicable to overcome the substantive right to trial, then we'd never have a summary judgment motion, ever. So obviously, obviously it's appropriate, even under State law, that summary judgment is appropriate in situations where a trial is not necessary because of the summary judgment considerations, no material facts in question, parties entitled to summary judgment as a matter of law. And, of course, Erie contemplates all of this. The Erie test, you look at the outcome determination test under Erie, you ask yourself this question. If we're going to prosecute this case under State law, would the result be substantially different? And, of course, we look at this case, and the answer is no, the result is not going to be substantially different. As we've pointed out in our memorandum, Arizona itself has adopted the Federal standard for granting summary judgments under Rule 56. They've followed the Federal standard since 1990 with the Orem school case in Arizona. And so as a result, if you were to prosecute this case in State court, the result would have been no different. And basically that satisfies Erie. The Court followed the procedural track to summary judgment and ended up in the same place as if they would have done so under State law. So I understand you correctly. Arizona law, either by virtue of the fact that even though the State constitution requires a trial, you have summary judgment and other things, trial doesn't really mean trial in the way that lawyers in first year law school talk about. It means disposing of disputed matters. Arizona's adopted, thankfully, the Federal procedural standard, Rule 56, or its equivalent under State law is there. And I think you have an Arizona State Supreme Court that allowed a summary judgment on a partition action, right, despite the language of this statute. Well, there are actually two. There's the case that Mr. Anderson cited, and then there's the Register v. Coleman case, and then there's also the Owens case in which the Court granted summary judgment. And those cases were both, well, the Superior Court granted summary judgment. They were both affirmed by the Arizona Supreme Court in which the summary judgment was affirmed. Now, in those cases, essentially the summary judgment involved issues involving ownership, ownership interests in the property, which is really one of the basic issues that might come up in a partition action, and the Court had no problem with affirming summary judgment under those circumstances. Now, in this case, the Court did grant summary judgment, and contrary to what the road map, but the statutory procedure does provide an alternate procedure for partition. And that procedure is under Arizona Revised Statutes 12-1218 that provides that if it appears, obviously after trial, but in this case we believe it's appropriate for summary judgment, but if it appears to the Court that a fair partition cannot be made without depreciating the value of the property, or if for any reason a sale is more beneficial to the parties or any of them, then the Court has the discretion to go ahead and order a sale. And in this particular case, I gather there's some pretty bad blood between the parties here, right, or among the parties? Well, I don't know if I would characterize it as bad blood, but certainly some serious disagreements. Not sharing dinner? I don't know. Okay. So you've got at least that, and if the Court was of the view that doing it the way that the plaintiffs talked about doing, having a bunch of separate sales, didn't make any sense, then the Court would have the right to structure a sale as well, right? Well, the Court recognized that selling individual parcels really would not be beneficial to all of the parties, because when you're talking about a cluster of 16 mining claims and you're going to sell individual pieces, any party that intends to hold out who purchases a small portion of that whole can therefore jeopardize the value to every other bit of the property. Or, and I'm sure this is what the plaintiffs would say, they could get a much better price, because they could squeeze you because they have that parcel. The owner of that particular parcel can do so at the expense of all the others. Okay. So basically your position would be that even though the owners on the Anderson family of an individual undivided interest might be able to squeeze the buyer, that in the case of the Anderson family, the buyer would suffer and that on balance it was much more equitable to do the sale as it was done. Yes. And that fits the statutory language if for any reason a sale is more beneficial to the parties or any of them. And this language is very broad. It gives the Court very, very broad discretion and obviously the Court pursued that. I assume that is your answer to the plaintiff's position that there is this horn book of actions you have to take and you have to do 1, 2, 3, 4, 5, 6 or you're in violation. Is that your, is that correct? Absolutely. That's exactly correct. You, this Section 1218 provides an alternate procedure to this horn book of actions that needed to be followed from one to the next. And I think the Court properly followed the statutory scheme. The Court properly entered summary judgment based on facts that were apparent in the record and under the circumstances involving the properties. And at this point, unless you have any further questions, I'm not going to. I have one additional question. Can I ask your opposing counsel about another offer, if you will, that came in? And I believe he indicated that it came in 65 days after, instead of 60 days. You're familiar with that offer? Yes. To your knowledge, on the record, what was it about the offer that would have made, say, a motion for reconsideration irrelevant? Well, the offer, first of all, wasn't a, it wasn't what could be construed as a binding offer. Essentially, it was a letter that said, we're prepared to purchase. Obviously, it also stated that there would be due diligence, and so it contemplated contingencies, and the Court also looked at it and construed it to not be a binding offer in that if, for example, the Court entertained this and said, oh, okay, we'll go ahead and sell to these folks, and then, but these folks were still in a position where they could say, no, we changed our mind. Conditional offer. Yeah. Did the offer include interest or offers by any of the plaintiffs? In other words, were they among the purported buyers in the 65-day offer? The — In other words, were the Andersons part of the buying group? I'm not aware that they were. Okay. Yeah. So this would, the Court had a problem, not because they were involved, but because you had a highly contingent offer, subject to, for example, due diligence and so on. It was not a firm offer, whereas the 60-day offer was, I gather, a firm offer for a set price. Yes. Yes. The contract that was available to Freeport was a binding offer. It was an offer that was submitted in writing and submitted to the Court. And was it an all-cash offer? No. No. There was a — there is — there's a cash price, which, by the way, has been paid and this offer has closed. Deeds and title have been transferred. And the offer contains additional consideration, which consists of a requirement that the purchaser, Freeport, will conduct exploratory drilling on the property and then, based on the results of that exploratory drilling, then they may have some discretion to ultimately mine the property. And if and when they mine the property, there's provision for royalty payments. And that's the additional consideration that's provided for in the offer. Okay. Any questions that my colleagues have? Thank you very much. Then we'll hear rebuttal. Thank you. I believe the counsel for the appellee misunderstands Owens. Owens is not an example of where land was partitioned by way of summary judgment. There was a partial summary judgment in the Owens case, but that had to do with the allegation of a verbal contract between the parties as to how they were to divide the property. And once that was decided against the owner that was saying we have a verbal agreement based on the statute of frauds, then it was remanded to the trial court to proceed with the partition action. So Owens does not stand for the notion that land was partitioned by way of motion for summary judgment. Only the Register v. Coleman case is an example of motion for summary judgment applying to an actual partition. Here, we really do not have a completed sale because not all of the legal consideration has been received. And so what the district court did is not a sale. It's not a completed sale. The district court basically just tried to align. Rather than divide the interests of the parties, he attempted to align their interests and put them in business together. And that is outside the scope of partition. Counsel, assuming that the summary judgment is inappropriate, what issues would need to be resolved through a trial? There's no question about the ownership, is there? Well, there could be because there's a number of bankruptcies from plaintiff's members. And so we don't know, without discovery, we don't know whether they are, all the plaintiff's members are the lawful owners. We don't know whether the Summary Family Trust has ever been an owner of record of any part of these 314 acres. We just, we, the defendants, we don't know. And so, and we put that in our opposition to the motion for summary judgment that we don't know that they own 5-6 or that the LLC owns 5-6. We'd like to see the chain of title. Any other issues in dispute? As far as motion for summary judgment, well, yes, I'm not sure the plaintiff is actually asking for a partition. They're not asking for a physical division and they're not asking for a completed sale. They're asking for something else, that the partition statutes do not allow. And so that's the, and so we think, we think if the district court is reversed and it's remanded to the district court with instructions and to follow the statutory procedure in Arizona, it's probable that the plaintiff will say, well, wait a minute, we don't actually want partition. If you're talking about maybe geographically dividing some portion or all of this property, we don't want that. We'll just do our 5-6 deal with Freeport and we'll fold up our tent and go away. We'll dismiss the partition petition because we don't actually want partition. We just wanted to use the defendant's portion, their property interest, as part of our deal. But if that can't happen, then we'll just do a 5-6 deal, an 83% deal with Freeport. And the defendants are not holding up any mining or any progress. Any owner can mine. A 1% owner can mine a mining claim. And so this is really just about a cram down. It's not about partition. Any other questions? Thank you very much. Thank you both for your argument. We appreciate it. The case just argued is submitted.
judges: Fernandez, M. Smith, Morris